ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
ALANNA C. BONDY, ESQ.
Nevada Bar No. 14830
HAN LEE, ESQ.
Nevada Bar No. 11407
**SGRO & ROGER**
2901 El Camino Ave., Ste. 204
Las Vegas, Nevada 89102
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
tsgro@sgroandroger.com
abondy@sgroandroger.com
hlee@sgroandroger.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WRA21 LLC, <br><br> Plaintiff, <br><br> v. <br><br> TECHNOLOGY ASSOCIATES DEVELOPMENT CORPORATION, and TSUNG-CHIEH CHEN aka KENT CHEN, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT WITH JURY DEMAND** |

Plaintiff WRA21 LLC ("WRA21"), by and through its attorney of record, ANTHONY P. SGRO, ESQ., ALANNA C. BONDY, ESQ., and HAN G. LEE, ESQ. of the law firm of SGRO & ROGER, brings this action against the Defendants TECHNOLOGY ASSOCIATES DEVELOPMENT CORPORATION and TSUNG-CHIEH CHEN aka KENT CHEN, (individually, "TADC" and "Chen" respectively; collectively, "Defendants") alleging as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff WRA21, LLC ("WRA21") is a Nevada limited liability corporation with its principal place of business in Las Vegas, Nevada. Roberto Amorosi ("Amorosi") is its sole manager.

2. Upon information and belief, Defendant TADC is a Taiwanese Company with a principal place of business in Taiwan.

3. Defendant Chen is a citizen of Taiwan and upon information and belief, he resides primarily in Taiwan.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(b) based on diversity of citizenship. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court may exercise personal jurisdiction over the Defendants pursuant to FRCP 4(k)(1)(A), NRS 14.065 (Nevada's Long Arm Statute), and the Due Process Clause. The non-resident Defendants have engaged in tortious conduct within and/or aimed at harming Plaintiff in Nevada and the Defendants have availed themselves of opportunities to conduct business in the state of Nevada, establishing minimum contacts with the forum, and is therefore subject to personal jurisdiction in Nevada on claim(s) arising out of those contacts.

6. The transactions, events, acts, practices, and occurrences that are the subject of this Complaint and that have proximately caused damage to Plaintiff WRA21 took place in Las Vegas, Clark County, Nevada.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because none of the Defendants are residents of any U.S. state or territory and a substantial part of the events and omissions giving rise to these claims occurred in this District.

## II. FACTUAL ALLEGATIONS

8. Plaintiff WRA21 owns and operate a business in Clark County, Nevada.

9. In July of 2023, the parties engaged in negotiations concerning the sale of certain racing vehicles to Plaintiff WRA21. WRA21 was in Las Vegas, Nevada during these negotiations. Ultimately, the parties contracted for Plaintiff WRA21 to purchase a vehicle identified as FXX-K EVO #58, VIN ZFF84DXX000219537 ("#58 Vehicle") in the amount of $4,730,000.00 from Defendant Chen and purchase a vehicle identified as FXX-K EVO #47, VIN ZFF84DXX000209602 ("#47 Vehicle"; collectively, the "Subject Vehicles") in the amount of $4,620,000.00 from Defendant TADC, for a combined total amount of $9,350,000.00.

10. Defendant Chen represented, in writing on July 17, 2023, that some legal documents

need to be finalized regarding the #58 Vehicle, but that it would not affect the transaction regarding the sale/purchase of the #58 Vehicle.

11. Pursuant to their contract, Plaintiff WRA21 wired $4,730,000.00 to Defendant Chen on July 20, 2023 and $4,620,000.00 to Defendant TADC on July 26, 2023.

12. Pursuant to their contract, Defendants agreed to deliver the Subject Vehicles to Plaintiff WRA21. Defendant Chen, specifically, contracted to deliver the #58 Vehicle by the end of July 2023. To date, Defendants have failed to deliver the Subject Vehicles.

13. Plaintiff WRA21 contacted Defendants multiple times to inquire as to the delivery of the Subject Vehicles or, in the alternative, demand a refund.

14. After repeated delays, Defendant TADC represented to Plaintiff WRA21 that it was unable to deliver the #47 Vehicle, as contracted.

15. On September 25, 2023, Defendants acknowledged, in writing, that they failed to deliver the Subject Vehicles and acknowledged that WRA21 was entitled to a full refund the entire payment in the amount of $9,350,000.00. However, Defendants claimed that they were unable to process a refund because their bank accounts had been frozen and an auditing process needed to occur before they could issue refunds to Plaintiff.

16. Plaintiff reached out to Defendants again on October 2, 2023 and October 9, 2023, as Defendants had not yet issue refunds. Plaintiff WRA21, in writing, sought information from Defendants as to the purported audit process and when Plaintiff WRA21 could actually expect a return of its funds.

17. On October 16, 2023, Defendants represented, in writing, that their bank accounts were still frozen and under audit and that they could not provide an estimated timeline regarding refunding the payments back to Plaintiff WRA21.

18. On October 31, 2023, Plaintiff WRA21 again wrote to Defendant Chen regarding his failure to provide any of the requested information regarding the purported audit process and demanded that he refund the entire payment in the amount of $9,350,000.00 back to Plaintiff WRA21 by November 2, 2023.

19. On November 3, 2023, Defendant TADC confirmed in writing that it had received a

payment of $4,620,000.00 from Plaintiff WRA21, which it acknowledged was deposited into its bank account with the Hongkong and Shanghai Banking Corporation Limited ("HSBC"). It stated again that HSBC had frozen its account. Defendant TADC further represented that it could only refund Plaintiff WRA21 after HSBC unfroze the account.

20. On November 3, 2023, Defendant Chen confirmed in writing that he had received a payment of $4,730,000.00 from Plaintiff WRA21, which was deposited into his bank account with E. Sun Bank, Singapore Branch ("Sun Bank"). He stated again that Sun Bank had frozen his account. Defendant Chen further represented that he could only refund Plaintiff WRA21 after Sun Bank unfroze the account.

21. In early November, Defendant Chen then represented that it could still deliver the #58 Vehicle provided that it received sufficient documentation from an unknown third-party to resolve a purported third-party claim over the vehicle.

22. On November 7, 2023, in joint correspondence sent by both TADC and Chen, the Defendants represented that TADC was attempting to process a refund to WRA21 via alternative methods (such as liquidating assets) and that Chen had processed the transfer of the #58 Vehicle to WRA21. However, Chen also represented that the "it takes time to obtain related documents for the transferring procedure" and that "the procedure can only be finished after receiving the necessary documents and the completion of the transfer by the Ferrari Company."

23. The #58 Vehicle was not actually transferred to WRA21 at this time, despite Chen's representation.

24. On November 15, 2023, Defendant TADC represented that it is working with its bank, the Hongkong and Shanghai Banking Corporation Limited ("HSBC"), to unfreeze its account in order to refund the payment of $4,620,000.00. It further stated that it was liquidating its assets to return the said sum.

25. On November 15, 2023, Defendant Chen represented that he was still willing to deliver the #58 Vehicle to Plaintiff WRA21, but that he had not yet obtained certain unspecified documents that were apparently necessary to complete the transfer of ownership. This statement was in contradiction to Chen's November 7, 2023 representation that the #58 Vehicle had been transferred

to WRA21.

26. On November 17, 2023, Plaintiff WRA21 sent correspondence to the Defendant demanding a phone conference and additional assurances and information concerning TADC's refund and the transfer of the #58 Vehicle.

27. The Defendants failed to co-operate in the scheduling of a conference call and failed to provide adequate assurances to Plaintiff, as requested.

### III. CAUSES OF ACTION

**First Cause of Action**
**(Breach of Contract)**

28. Plaintiff WRA21 repeats and re-alleges each and every fact and allegation contained in this Complaint as though fully set forth herein.

29. Plaintiff WRA21 entered into valid contracts with Defendants. Pursuant to these contracts, Plaintiff WRA21 agreed to pay $4,730,000.00 to Defendant Chen for the purchase of the #58 Vehicle and agreed to pay $4,620,000.00 to Defendant TADC for the purchase of the #47 Vehicle. In exchange, Defendants agreed to deliver the Subject Vehicles to Plaintiff WRA21.

30. Plaintiff performed pursuant to the terms of the contracts by wiring $4,730,000.00 to Defendant Chen on July 20, 2023 and $4,620,000.00 to Defendant TADC on July 26, 2023.

31. Defendants breached the contracts by failing to timely deliver the Subject Vehicles.

32. Thereafter, Defendants failed to refund the money wired to them by Plaintiff, despite repeated written assurances that they would do so.

33. As a direct and proximate result of the breach of contract by Defendants, Plaintiff WRA21 has suffered damages in excess of $9,350,000.00.

**Second Cause of Action**
**(Breach of Implied Covenant of Good Faith and Fair Dealing (Contract))**

34. Plaintiff WRA21 repeats and re-alleges each and every fact and allegation contained in this Complaint as though fully set forth herein.

35. Defendants and Plaintiff WRA21 were parties to contracts regarding the sale and purchase of the Subject Vehicles.

36. Every contract imposes upon the contracting parties a duty of good faith and fair

dealing, which provides that each party deal fairly with the other and that neither party do anything that will deprive the other party of the benefits of their agreement.

37. The contracts constitute valid and existing agreements between WRA21 and the Defendants.

38. WRA21 performed under the Contracts by timely transferring funds for the purchase of the Subject Vehicles to the Defendants.

39. WRA21 was entitled to receive the benefit it bargained for under the contracts, which was the timely delivery of the Subject Vehicles.

40. The Defendants breached their duty of good faith and fair dealing by failing to perform in a manner that was faithful to the purposes of the contracts, to wit, by failing to timely deliver the Subject Vehicles.

41. As a direct and proximate result of the actions by Defendants, Plaintiff WRA21 has suffered damages in excess of $9,350,000.00.

### Third Cause of Action
### (Fraudulent or Intentional Misrepresentation)

42. Plaintiff WRA21 repeats and re-allege each and every fact and allegation contained in this Complaint as though fully set forth herein.

43. When the contract was formed between TADC and WRA21 in July of 2023, Defendant TADC made false representations that it was able to deliver the #47 Vehicle to Plaintiff WRA21.

44. Thereafter, TADC acknowledged that it, in fact, did not have the ability to sell the #47 Vehicle or deliver it to WRA21.

45. Upon information and belief, Defendant TADC knew that its representations to WRA21 concerning its ability to sell the #47 Vehicle were false or it had an insufficient basis for making such representations.

46. After TADC confirmed that it was unable to deliver the #47 Vehicle to WRA21, it expressed, in writing, multiple times that it would refund WRA21 the monies that were wired to it for the purchase of the #47 Vehicle.

47. Plaintiff WRA21 sent correspondence to TADC inquiring as to the status of the refund on October 2, October 9, October 31, November 5, November 11, and November 17, 2023. Defendant TADC repeatedly reassured Plaintiff WRA21 in correspondence dated September 25, October 16, November 3, and November 15, 2023 that it would refund the $4,620,000.00 that Plaintiff WRA21 had wired to it for the purchase of the #47 Vehicle as soon as its bank, HSBC, completed an audit and unfroze its bank account. Further, in its November 15, 2023 correspondence, Defendant TADC represented that it was liquidating its assets in order to process the refund.

48. On multiple occasions Plaintiff WRA21 requested that TADC provide details concerning the audit process and a timeline for TADC to process the refund. However, Defendant TADC failed to provide any specifics.

49. On November 17, 2023 Plaintiff WRA21 requested that TADC provide details concerning the liquidation of TADC's assets to effectuate the refund of WRA21's monies. However, Defendant TADC failed to provide any specifics.

50. In its November 17, 2023 correspondence to Defendant TADC, Plaintiff WRA21 sought to schedule a phone conference with TADC and HSBC to obtain information directly from HSBC regarding the status of the audit and when TADC's bank account would be unfrozen. However, TADC failed to cooperate in coordinating such a call.

51. Upon information and belief, Defendant TADC falsely represented that its bank account was frozen and/or that it was unable to promptly refund the monies owed to WRA21.

52. Upon information and belief, Defendant TADC intended to induce Plaintiff WRA21 into relying upon its misrepresentation in order to avoid or delay refunding the $4,620,000.00 to Plaintiff WRA21.

53. Plaintiff WRA21 justifiably relied upon Defendant TADC's misrepresentations by repeatedly granting TADC more time to process the refund for the #47 Vehicle.

54. To date, Defendant TADC has failed to refund any of the $4,620,000.00 that Plaintiff WRA21 had wired for the purchase of the #47 Vehicle.

55. As a direct and proximate result of the actions by Defendant TADC, Plaintiff WRA21 has suffered damages in excess of the $4,620,000.00.

## Fourth Cause of Action
## (Fraudulent or Intentional Misrepresentation)

56. Plaintiff WRA21 repeats and re-allege each and every fact and allegation contained in this Complaint as though fully set forth herein.

57. When the contract between WRA21 and Chen was formed in July of 2023, Defendant Chen made false representations that #58 Vehicle will be delivered by the end of July 2023.

58. Before Plaintiff WRA21 wired $4,730,000.00 for the purchase of #58 Vehicle, Defendant Chen represented in writing on July 17, 2023 that some legal documents needed to be finalized regarding the sale of the #58 Vehicle, but that it would not affect Chen's ability to perform under the contract.

59. Upon information and belief, Defendant Chen knew that its representations to WRA21 concerning its ability to deliver the #58 Vehicle by the end of July 2023 were false or it had an insufficient basis for making such representations.

60. Despite multiple demands by WRA21 to the deliver of #58 Vehicle, or in the alternative, process a refund, Defendant Chen failed to deliver the #58 Vehicle or refund WRA21 its monies.

61. Plaintiff WRA21 sent correspondence to TADC inquiring as to the status of the transfer of the #58 Vehicle, or in the alternative, a refund, on October 2, October 9, October 31, November 5, November 11, and November 17, 2023. Defendant Chen repeatedly reassured Plaintiff WRA21 in correspondence dated September 25, October 16, and November 3, that it would either transfer the #58 Vehicle to WRA21 or refund the $4,730,000.00 that Plaintiff WRA21 had wired to it for the purchase of the #58 Vehicle as soon as its bank, Sun Bank, completed an audit and unfroze its bank account. Further, in its November 7, 2023 correspondence, Defendant Chen falsely represented that he had transferred ownership of the #58 Vehicle to WRA21.

62. On multiple occasions Plaintiff WRA21 requested that Chen provide details concerning the status of the transfer of the #58 Vehicle or details concerning Chen's purported frozen bank account. However, Defendant Chen failed to provide any specifics.

63. Upon information and belief, Defendant Chen falsely represented that he could or

would deliver the #58 Vehicle to WRA21

64. On at least one occasion, Defendant Chen misrepresented that he had transferred ownership of the #58 Vehicle to WRA21.

65. Upon information and belief, Defendant Chen misrepresented that its bank account was frozen and/or that it was unable to promptly refund the monies owed to WRA21.

66. Upon information and belief, Defendant Chen intended to induce Plaintiff WRA21 into relying upon its misrepresentation in order to avoid delivering the #58 Vehicle or to or delay refunding the $4,730,000.00 to Plaintiff WRA21.

67. Plaintiff WRA21 justifiably relied upon Defendant Chen's misrepresentations by repeatedly granting Chen more time to deliver the #58 Vehicle or process a refund.

68. To date, Defendant Chen has failed to refund the $4,730,000.00 that Plaintiff WRA21 wired to him for the purchase of the #58 Vehicle or to deliver the #58 Vehicle.

69. As a direct and proximate result of the actions by Defendant Chen, Plaintiff WRA21 has suffered damages in excess of $4,730,000.00.

**Fifth Cause of Action**
**(Concert of Action)**

70. Plaintiff WRA21 repeats and re-allege each and every fact and allegation contained in this Complaint as though fully set forth herein.

71. Defendants each or together acted to commit a tort against Plaintiff WRA21 while acting in concert or pursuant to a common design by failing to either timely deliver the Subject Vehicles or refund the entire payment Plaintiff WRA21 wired to them.

72. As a direct and proximate result of the concerted actions by Defendants, Plaintiff WRA21 has suffered damages.

**Sixth Cause of Action**
**(Unjust Enrichment – In the Alternative)**

73. Plaintiff WRA21 repeats and re-allege each and every fact and allegation contained in this Complaint as though fully set forth herein.

74. In the event that the contracts between WRA21 and the Defendants are deemed to be invalid or unenforceable, Defendants wrongly received economic benefits to which they were not

entitled.

75. Defendants appreciated the economic benefit conferred upon them by Plaintiff WRA21 by accepting and retaining the amount of $9,350,000.00 wired to them by Plaintiff.

76. It would be against the fundamental principles of justice or equity for Defendants to retain any of the payments Plaintiff WRA21 wired to them because Plaintiff failed to receive any benefit from its transfer of funds to the Defendant.

77. As a direct and proximate result of the actions by Defendants, Plaintiff WRA21 has suffered damages in excess of $9,350,000.00.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff WRA21 requests that this Court award it the following relief against Defendants:

    a. For compensatory damages on each and every cause of action;

    b. For punitive or exemplary damages to the extent permitted by law;

    c. For pre and post judgment interest as provided by law;

    d. For reasonable attorneys' fees and costs to the extent permitted by law; and

    e. For such other and further relief as the Court may deem lawful and just.

## V. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED this 22nd day of November, 2023.

Respectfully submitted,

**SGRO & ROGER**
*/s/ Anthony P. Sgro*
ANTHONY P. SGRO, ESQ.
Nevada Bar No. 3811
ALANNA C. BONDY, ESQ.
Nevada Bar No. 14830
HAN G. LEE, ESQ.
Nevada Bar No. 11407
2901 El Camino Ave., Ste. 204
Las Vegas, Nevada 89102
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
*Attorneys for Plaintiff*